IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
(NORTHERN DIVISION)

ANTWERPEN CHEVROLET, LTD., et al.,      :
                                        :
Plaintiffs,                             :
                                        :
v.                                      :      Civil Action No.  CCB02CV1271
                                        :
                                        :
RESOLUTION PROVIDERS, INC., et al.,     :
                                        :
Defendants.                             :

## OBJECTIONS TO ORDER OF DISCOVERY AND AWARD OF EXPENSES

COME NOW the defendant, Resolution Providers, Inc. ("RPI"), Watt, Tieder, Hoffar & Fitzgerald, L.L.P. ("WTHF") and the individual counsel of record for defendant, and pursuant to Federal Rule of Civil Procedure 72, hereby submit Objections to the  Magistrate Judge's February 11, 2003 Order of further discovery and award of expenses  (the "Order) and would state as follows:

## I.    INTRODUCTION

On August 21 and September 11, 2002, Antwerpen Chevrolet, Ltd. ("Antwerpen" or "plaintiff") filed its Motion to Compel Proper Responses to Interrogatories and Motion to Compel Production of Documents in this matter, respectively.  RPI filed its Opposition to both Motions on September 11, 2002.  Magistrate Justice Guavey issued an Order granting Plaintiff's Motions, in part, on February 11, 2003.  ("Order") (The Order dated February 11, 2003 is attached hereto as Exhibit 1).

Prior to the issuance of the Order, RPI petitioned, on January 23, 2003 pursuant to Chapter 7, for relief in bankruptcy.  The Order directs RPI to comply with discovery in the captioned action, by supplying affidavits with respect to its effort to identify and to produce

requested documents and other information. The Order further directs RPI to supplement certain interrogatory responses on or before March 5, 2003. Finally, the Order includes an award of expenses to Plaintiff in the amount of $1,500, for which RPI, WTHF and the individual undersigned attorneys were held to be jointly and severally liable. RPI, WTHF and the undersigned attorneys respectfully request that this Honorable Court vacate the Order in light of the facts and authority set forth herein as well as the Affidavit of Justin S. Hawkins, Esquire, which is attached hereto as Exhibit 2.

## II.    FACTUAL BACKGROUND

1.    At all times relevant to this proceeding, the individual Defendant, Mr. Mark McDonald ("Mr. McDonald") served as Vice President for RPI. Mr. McDonald was involved personally and substantially in the preparation of RPI's responses to the Discovery Requests that are the subject of the February 11, 2003 Order. (Exhibit 2, ¶ 2).

2.    On May 22, 2002, Counsel for Plaintiff mailed Antwerpen's Interrogatories and Request for Production of Documents ("Discovery Requests") to the offices of WTHF. Upon receipt, WTHF sent the Requests to Mr. McDonald via facsimile on May 28, 2002. (Exhibit 2, ¶ 3).

3.    RPI's Response to Plaintiff's Interrogatories was served on June 25, 2002. WTHF spoke with Mr. McDonald on June 14, 20, and 21, 2002 specifically in connection with the preparation of RPI's Interrogatory Responses. Mr. McDonald verified the Interrogatory Responses. (Exhibit 2, ¶ 3).

4.    On July 15, 2002, WTHF received a letter from counsel for Plaintiff, Price Geilen, Esquire, outlining his objections to RPI's Interrogatory Responses. (Exhibit 2, ¶ 4).

5.    On July 17, 2002, WTHF and Mr. McDonald discussed in detail each and every objection contained in Mr. Gielen's correspondence. Mr. McDonald assured WTHF of his full compliance with discovery. (Exhibit 2, ¶ 5).

6.    Concurrent with the discussions regarding the Interrogatory Responses, WTHF also was coordinating the details for RPI's document production with Diane Bristow, Esquire, an associate of Mr. Gielen. (Exhibit 2, ¶ 6).

7.    On July 8, 2002, Mr. Gielen inquired regarding RPI's production of documents. On July 9, 2002, WTHF called Mr. McDonald to inquire about the status of the document production. On July 12, 2002, WTHF served RPI's written response to the Request for Production of Documents. (Exhibit 2, ¶ 7).

8.    On July 15, 2002, WTHF informed Ms. Bristow that WTHF had received the responsive documents from RPI, and would produce the documents following a review for privilege. On July 16, 2002, WTHF further discussed production of RPI's documents with Ms. Bristow. Specifically, WTHF and Ms. Bristow discussed the volume and nature of the documents (approximately one banker's box) and agreed that it would not be economical for Ms. Bristow to travel to WTHF's offices to conduct a review. Therefore, by letter dated July 17, 2002, WTHF agreed to produce all relevant, non-privileged documents on Friday August 2, 2002, and confirmed that Ms. Bristow would arrange for a copy service to pick up the documents on that day. (Exhibit 2, ¶ 8).

9.    Following the review of documents for privilege, WTHF concluded that none of the documents were privileged. Accordingly, WTHF produced every single document received from RPI. (Exhibit 2, ¶ 9).

10.    Concurrent with the investigation of the responses to Interrogatories and the coordination of the production of documents, WTHF also was preparing a response to Plaintiffs' first Motion for Leave to Amend the Complaint. Plaintiffs' Motion for Leave to Amend was filed on July 15, 2002. The Motion was granted on September 9, 2002, to permit the filing of Plaintiff's First Amended Complaint, which included a new cause of action for anticipatory breach and attached an additional unexecuted contract. The defendants filed Answers to the First Amended Complaint on September 23, 2002. (Exhibit 2, ¶ 10).

11.    On August 14, 2002, Mr. Gielen forwarded a letter to WTHF, via facsimile, which expressed concerns that RPI had not produced all documents responsive to the Request for Production of Documents. Mr. Gielen also attached an unexecuted copy of the Motion to Compel Proper Responses to Interrogatories. (Exhibit 2, ¶ 11).

12.    On August 15, 2002, WTHF faxed the August 14 letter and Motion to Compel to Mr. McDonald. On August 16, 2002. WTHF informed counsel for Plaintiffs that RPI's position had been that every single, responsive document already had been produced, but that WTHF would follow up again with RPI regarding the specific objections in order to ensure a full production. (Exhibit 2, ¶ 12).

13.    On August 21, 2002, Mr. Gielen served Antwerpen's Motion to Compel Production of Documents. On August 23, 2002, WTHF forwarded a copy of the Motion to Compel Production of Documents to Mr. McDonald and made numerous attempts to contact Mr. McDonald in order to resolve the issues raised by Mr. Gielen. (Exhibit 2, ¶ 13).

14.    During this period, on August 22 and 23, WTHF also made numerous attempts to contact Mr. Gielen regarding the timing of RPI's responses to the Motions to Compel. On Friday, August 23, 2002 WTHF forwarded a letter to Mr. Gielen informing him that WTHF fully

4

intended to address his specific concerns with RPI, and that the issues would be addressed the following week, September 2, 2002. (Exhibit 2, ¶ 14).

15.    On September 4, 2002, WTHF discussed specifically each and every concern contained in both Plaintiff's Motion to Compel Proper Responses to Interrogatories and Motion to Compel Production of Documents with Mr. McDonald. WTHF advised Mr. McDonald that if there were any documents, even remotely relevant, RPI needed to produce such documents immediately. WTHF warned Mr. McDonald of the potentially negative ramifications on its defense should RPI fail to produce all documents in its possession or control. Mr. McDonald assured WTHF that he would conduct another search for responsive documents to ensure that RPI already had produced all documents requested. (Exhibit 2, ¶ 15).

16.    Subsequently, Mr. McDonald informed WTHF that RPI's files contained documents entitled, "ARGO commission reports." Mr. McDonald indicated that he was unsure whether the documents previously had been produced. (Exhibit 2, ¶ 16).

17.    WTHF reviewed the documents located by Mr. McDonald and, after determining that the documents had not been produced, forwarded the "ARGO commission reports" documents to Mr. Gielen on September 11, 2002 as an attachment to RPI's Opposition to the Motion to Compel. (Exhibit 2, ¶ 16).

18.    On September 9, 2002, all discovery issues were referred to U.S. Magistrate Justice Guavey for resolution. (Exhibit 2, ¶ 17).

19.    On September 11, 2002, RPI filed its Opposition to the Motion to Compel Production of Documents and Proper Responses to Interrogatories. (Exhibit 2, ¶ 18).

20.    On September 19, 2002, the Motions to Compel were set for a telephone hearing to be conducted on October 16, 2002. (Exhibit 2, ¶ 19).

21.    On October 16, the day scheduled for the telephone hearing, WTHF received a message, confirming that the hearing had been cancelled. (Exhibit 2, ¶ 20).

22.    On October 2, 2002, the Defendants moved for a Protective Order to prevent the discovery of bank account records sought by Antwerpen first in its Discovery Requests, and then through a subpoena.  On November 15, 2002 Defendants' Motion to Quash was granted on procedural grounds, but the Motion for Protective Order was denied. (Exhibit 2, ¶ 21).

23.    On October 7, 2002, the Defendants also moved to dismiss Plaintiffs' First Amended Complaint on the principal grounds that Antwerpen failed to allege any valid damages, and therefore, failed to state a claim upon which relief could be granted.  The defendants also sought the dismissal of any action against the individual defendants for lack of personal jurisdiction, based in part on Plaintiffs' failure to state a claim.  Based upon Plaintiffs' request in its Opposition to the Motion to Dismiss for leave to amend its First Amended Compliant, this Court denied defendants' Motion to Dismiss, without prejudice, on December 12, 2002. Pursuant to the Order, plaintiffs were required to file a Second Amended Complaint on or before January 6, 2003. (Exhibit 2, ¶ 22).

24.    On January 23, 2003, RPI petitioned for relief pursuant to Chapter 7 in bankruptcy.  Upon notification of the bankruptcy petition by PRI's bankruptcy counsel, WTHF immediately informed counsel for plaintiffs and the Court. (Exhibit 2, ¶ 25).

25.    On January 27, 2003, the individual defendants filed their Answers to Plaintiffs' Second Amended Compliant.  In light of the automatic stay, no responsive pleading was filed on behalf of RPI.

26.    On January 24, 2003, WTHF filed its Motion to Withdraw from representation of the individual defendants in this action.  WTHF also has moved this Court to withdraw from its representation of the corporate defendant, RPI.

## II.    ARGUMENT

### A.    STANDARD OF REVIEW

Federal Rule of Civil Procedure 72 provides parties with an opportunity to file with the District Court Judge objections to nondispositive rulings issued by a Magistrate Judge.  Fed. R. Civ. P. 72(a).  The Rule further provides that the District Court Judge shall modify or set aside any order found to be clearly erroneous or contrary to law.  Id.

As set forth more fully below, the February 11, 2003 Order regarding discovery must be set aside as clearly erroneous and contrary to law.  As an initial matter,  the Order directs RPI, in violation of the automatic stay, to respond to continuing discovery demands and to submit affidavits required by the Court.

Secondly, the imposition of an award of expenses against counsel is clearly erroneous and contrary to law.  In its Motions to Compel, plaintiff sought sanctions in the amount of $1,500.00 solely against RPI.  Nonetheless, without any notice to counsel or the provision of an opportunity to be heard prior to issuance of the decision, the Order directs an award of expenses against WTHF and the individual attorneys, jointly and severally with RPI.  As such, the Order is contrary to Federal Rule of Civil Procedure 37(a)(4)(A), and must be set aside.

Third, the Order is clearly erroneous as it is based on the implied finding that RPI withheld relevant documents.  This finding is based solely upon the Court's acceptance of Antwerpen's suspicion that RPI failed to produce documents that one would expect to find in the normal operation of the business alleged to have occurred in the various pleadings.  There were

no facts presented to the Magistrate Judge, however, which would support such an assumption. Rather, as set forth in the Affidavit of Justin S. Hawkins and the attached exhibits, the facts support a determination that RPI produced every responsive document, and that WTHF ensured that RPI conducted a diligent investigation and had complied with discovery.

Fourth, the Order awarding expenses is clearly erroneous in that RPI, WTHF and the individual attorneys acted with substantial justification in the preparation of discovery responses, including the objections, and in the submission of the Opposition to the Motions to Compel. And finally the Order awarding expenses is unjust as there are no facts, whether alleged by Plaintiff or otherwise inferred by this Honorable Court, which would support a finding imputing any actual or perceived intent to evade, delay or otherwise to prevent discovery, or any other bad faith, on the part of WTHF or the individual undersigned attorneys in the conduct of discovery and in the preparation of responses to Plaintiff's Motions to Compel.  Accordingly, RPI respectfully requests this Honorable Court to set aside the Order regarding discovery issued February 11, 2003, and in particular, the continuing discovery obligations imposed upon RPI and any award of expenses against RPI, WTHF or the individual counsel.

### B.    THE ORDER FOR FURTHER DISCOVERY AND MONETARY SANCTIONS VIOLATES THE AUTOMATIC STAY

On January 23, 2003 RPI petitioned for a Chapter 7, no asset, bankruptcy.  The Bankruptcy Code, specifically provision 11 U.S.C.A. § 362, operates as an automatic stay to any litigation against the debtor.  Pursuant to federal law, the automatic stay is effective from the date of filing.  Section 362 expressly prevents the commencement or the continuation of any litigation to recover a claim against the debtor that arose before the commencement of the bankruptcy proceeding.  11 U.S.C.A § 362(a)(1).  The provision is fundamental to debtor protection and is intended to provide the debtor with a "breathing spell" from its creditors.  Grady v. A.H. Robins,

Inc., 839 F.2d 198, 202 (4th Cir. 1988). Congress intended that *all* legal obligations, no matter how remote, be dealt with in the bankruptcy proceeding. Id. Consequently, the automatic stay operates to relieve RPI of the obligation as set forth in the Order to continue to respond to discovery, and to satisfy monetary sanctions.[1]

Furthermore, the case at bar is not a case in which additional discovery should be allowed despite the automatic stay. First, there was no discovery order pending prior to RPI's institution of bankruptcy proceedings. Therefore, the Court is not constrained to demand further discovery and to award expenses in order to enforce a Court order. Secondly, the discovery required pursuant to the Order is not narrowly tailored to seek only a limited set of documents in order to avoid some prejudice. Rather, the discovery sought by plaintiffs and ordered by the Court is broad and tailored specifically towards plaintiffs recovery of a pre-petition claim outside the bankruptcy proceeding; the very activity Congress intended to prevent by the automatic stay provision.

Importantly, pursuant to Bankruptcy Rule of Procedure 2004, plaintiffs are afforded a proper and liberal opportunity to conduct discovery regarding its pre-petition claims as part of the bankruptcy proceeding. Therefore, enforcement of the automatic stay in this action, as intended by Congress, will neither deprive plaintiffs of the ability to conduct discovery, nor relieve RPI of its responsibility to comply with proper discovery requests. Rather, enforcement of the automatic stay simply will transfer the forum in which the discovery is to be conducted. Accordingly, RPI respectfully requests that this Honorable Court vacate as contrary to law the

---

[1] Additionally, WTHF has had no communication, aside from a single e-mail, with RPI or any of its employees since December 10, 2002. In light of this lack of communication, WTHF has had no opportunity to discuss RPI's compliance with the Order. WTHF has forwarded the Order to RPI. However, it is impossible for WTHF to know whether RPI received the Order or is able to comply by March 5, 2003 with the requirements set forth in the Order. Accordingly, WTHF also have provided RPI with notice of WTHF's intention to withdraw from representation of RPI at the address for RPI provided by RPI's bankruptcy counsel.

Order requiring RPI to submit affidavits and further discovery responses in this proceeding, as well as the order of monetary sanctions against RPI.

## C. RPI'S OPPOSITION TO THE MOTION TO COMPEL ON THE GROUNDS THAT ALL RESPONSIVE DOCUMENTS HAD BEEN PRODUCED WAS SUBSTANTIALLY JUSTIFIED

Federal Rule of Civil Procedure 37(a)(4)(A) does not permit an award of expenses where the party's conduct in opposing the Motion to Compel further discovery was substantially justified. In the case at bar, RPI's Opposition to plaintiffs' Motions to Compel was proper and substantially justified. Accordingly, RPI respectfully requests this Honorable Court to set aside the Magistrate Judge's Order dated February 11, 2003, awarding expenses against RPI, WTHF and the individual attorneys.

In this case, RPI produced every relevant document in its possession. Counsel for RPI determined that none of the documents provided by RPI were privileged and withheld no documents from production. RPI then properly maintained in both good faith discussions with counsel for plaintiffs and its pleadings before this Court that all responsive documents had been produced. Indeed, in response to plaintiffs' Motion to Compel, RPI argued that the production was complete and specifically described the various categories of documents produced. In its Opposition, RPI stated that it produced "Argo commission reports, cancelled checks, production reports, Guaranty National Submission Reports, Shortage Reports, and any other documentation in RPI's possession that is responsive and relevant to Plaintiff's discovery requests." (Opposition, p. 2).

The majority of the documents produced to plaintiffs consist of claims files, wherein every document relating to the administration of a particular claim for an individual claimant is centralized in one file. The documents contained in the files depict each transaction in the

process that RPI undertook with regard to each separate claim. Indeed, the review of a single claim file reveals that the documents produced are indeed responsive to Antwerpen's discovery requests. (Claim file entitled "Esposito, Bernard", attached hereto as Exhibit 4). Consideration of the actual documents produced also contradicts the Magistrate Judge's determination that RPI failed to maintain and to produce documents one would expect to find in a similar business operation.

RPI's claim file is cohesive and understandable and is representative of the many files produced.[2] Page 1 is an internal RPI memorandum to Carol Stevens (identified as a potential witness in RPI's response to Interrogatory No. 2). This document evidences internal communications regarding the claim processing procedures as well as the identity of the claimant. Such information is directly responsive to Interrogatory Nos. 11 and 12. Moreover, this document is an internal RPI document responsive to Request for Production No. 2.

Page 2 of the claim file is a document entitled "Claim Settlement Worksheet" prepared by Terry J. Poulin. This document includes information generated by Lee & Mason, one of the insurance companies identified by RPI. The document also identifies an employee at Lee & Mason, who administered the claim for what Lee & Mason entitled the, "RPI-Contractual Liability Program." Moreover, the document also provides the insurance policy number. Thus, this Lee and Mason generated document, contained in a claim file produced to plaintiffs provides information directly responsive to Requests for Production 8 and 9 and Interrogatory Nos. 2, 4, 5, 6 and 12. This claims file, and numerous others produced to plaintiffs, also provides further evidence that contradicts plaintiffs' unsupported assertion that RPI did not produce insurance related documents.

---

[2] Counsel for RPI has paginated the separate documents in this file for ease of reference.

Page 3 of the claims file is a check issued by the Guaranty National Insurance Company, the other insurance company identified in its discovery responses by RPI. This document identifies the effective dates of the insurance and contains the policy number. The check also provides bank information for Guaranty National. Thus, this document is responsive to Request for Production Nos. 8 and 9 and Interrogatory Nos. 2, 4, 5, 6, and 12.

Page 4 of the claims file is documentation of RPI's payment of monies received from the insurance company to the creditor. Again, this document is responsive to Interrogatory No. 2. Pages 5-7 are copies of documents already discussed.

Page 8, entitled "GAP reporting form", is a worksheet regarding calculation of the amount of a claim. Thus, this document reveals RPI's internal procedures for the claims handling process and is responsive to Request for Documents No. 2 and Interrogatory Nos. 2, 4, and 12. Pages 9 through 20 are copies of certain of the documentation submitted with the GAP claim, including the customer credit agreement, the insurance payoff for the totaled vehicle, documentation of the insurance company's investigation, and the GAP Waiver Agreement entered into by the customer. Such documents provide further evidence of RPI's internal policies and procedures of the claim process.

Page 21 of the claims file is further correspondence from Lee & Mason to RPI. This re-confirms the policy number and identifies Lee & Mason contacts regarding the specific claims identified. Thus, this document contains information directly responsive to Interrogatory Nos. 2, 4, 5, and 6 as well as Request for Production Nos. 8 & 9.

Page 22 of the claims file is another document generated by Lee & Mason. This document also identifies an employee of RPI who had role in processing claims. Thus, this

document contains information directly responsive to Interrogatory Nos. 2, 4, 5, and 6 as well as Request for Production Nos. 8 & 9.

Page 23 of the claims file is correspondence from RPI to Lee & Mason, forwarding the claim documents. This document contains contact information for Lee & Mason. Thus, this document contains information directly responsive to Interrogatory Nos. 2, 4, 5, and 6 as well as Request for Production Nos. 8 & 9.

Page 24 of the claims file is correspondence from RPI to the individual claimant informing him of the documentation necessary to process the claim. This document constitutes correspondence with a third party regarding GAP agreements, and is directly responsive to Interrogatory No. 4. Pages 25-28 are copies of claim documentation previously discussed.

Page 29 is a hand written letter from the customer. The document is responsive to Interrogatory No. 4.

Page 30 is yet another piece of correspondence from Lee & Mason to RPI. This document provides information responsive to Interrogatory Nos. 2, 4, 5, and 6 as well as Request for Production Nos. 8 & 9.

Page 30 is further correspondence between RPI and the individual claimant. Page 33 is the letter to RPI from the lender attached to the previous correspondence with the customer. This third party correspondence is responsive to Request for Production No. 2 and Interrogatory Nos. 2, 4, and 12.

Pages 34, 35 and 40 constitute additional correspondence from RPI and Lee & Mason, forwarding necessary documentation to process the claim. Pages 36-39 is a credit company document. These documents provide information responsive to Interrogatory Nos. 2, 4, 5, and 6 as well as Request for Production Nos. 8 and 9.

In short, this review of a single claims file already produced by RPI reveals that RPI has produced documents responsive to each of the many Discovery Requests propounded by plaintiffs. The documents produced were not voluminous, amounting to little more than one bankers box, and therefore, the information requested by plaintiffs is easily discerned from the documentation contained in the individual claims files. Accordingly, RPI's normal maintenance of claim documents in a single claim file is not improper or inconsistent with standard business practice. The claims file reviewed herein, and the other claims files already produced by RPI, contain RPI internal communications, back and forth correspondence between RPI and its insurance company, correspondence between RPI and the individual claimant, as well as correspondence between the claimant's lender and RPI. A review of a representative claims file also reveals the straightforward administration of a claim. The process is accomplished without any involvement on the part of Antwerpen. Therefore, the absence of correspondence with plaintiffs provides absolutely no support for a determination that RPI improperly has withheld documents.

Nonetheless, in the Order dated February 11, 2003, the Court rejected RPI's consistent and uncontradicted contention that all responsive documents already had been produced, finding that, "defendants' stated lack of documents is inconsistent with ordinary and expected business records practice." (Order, dated February 11, 2003, at p. 2). RPI, however, never has claimed to lack the documents requested by plaintiffs. Rather, RPI's contention, which is countered only by the rank suspicion of the plaintiffs, is that the claims files and other documentation already produced to Antwerpen includes all of the correspondence, internal documentation and other records requested by the plaintiffs. RPI did not, and is not required to, maintain its file in a manner consistent with plaintiffs' expectations. RPI's complete production of its files as

maintained in the ordinary course of business is in full compliance with the discovery request issued by plaintiffs. Accordingly, the Magistrate Judge's conclusion that there is a "paucity" of documents, without even a request to review the documents already produced, is clearly erroneous. Therefore, RPI respectfully requests this Honorable Court to set aside the discovery Order dated February 11, 2003.

Furthermore, even assuming that Antwerpen's contention that further documents may, or even should, exist is supportable, the Magistrate Judge's award of expenses against RPI, WTHF and the individual attorneys is clearly erroneous and contrary to law. Cullins v. Heckler, 108 F.R.D. 172 (S.D.N.Y. 1985). In Cullins, the defendant objected to a Magistrate's award of expenses under Rule 37(a)(4)(A). The defendant had asserted in response to discovery motions that the statistical evidence requested by the plaintiffs did not exist. The plaintiffs argued that it was impossible for such information not to exist. With respect to the award of expenses against the defendant, the court stated:

> Plaintiffs' belief here that it was impossible that the Government did not possess the information in question is surely understandable, and is surely more than enough to support a good faith motion to compel based on alleged Government evasiveness. It is not enough, however, to support a claim that plaintiff is entitled to the costs of making a motion.

Cullins at 177.

Likewise, in this case, absent any information that additional documents exist, and have not been produced, plaintiffs' suspicion, while understandable, will not support an award of expenses. Indeed, plaintiffs' can offer nothing more than suspicion. Accordingly, the Order requires only that RPI confirm, through an affidavit, that it has conducted a reasonable investigation for responsive documents, and that no additional documents are in existence. Therefore, the only information before this Court is RPI's consistent and reasonable contention

that it has produced every document in its possession responsive to the discovery requests.[3]

Accordingly, RPI, WTHF and the individual attorneys respectfully request this Honorable Court

to vacate the Order dated February 11, 2003.

**D.    RPI'S OBJECTIONS TO PLAINTIFFS' DISCOVERY REQUESTS WERE SUBSTANTIALLY JUSTIFIED**

RPI's objections to the discovery requests were also substantially justified.  In response

to the Interrogatories and the Request for Production of Documents, RPI produced every relevant

document in its possession.  The only information withheld by RPI was its account number at

Fleet Bank.  RPI specifically moved for a Protective Order to protect that information.

While RPI objected to many of the discovery requests as overly broad, burdensome, and

irrelevant in light of the insufficient allegations of the Complaint, in each and every case, RPI

produced every relevant document in its possession and RPI answered each Interrogatory to the

best of its knowledge.    Moreover, the documents produced contain information directly

responsive to the Interrogatories that is readily ascertainable.    Therefore, the Order dated

February 11, 2003 also is clearly erroneous in finding that RPI withheld documents requested by

plaintiffs.  Furthermore, the Order is clearly erroneous in that WTHF never counseled RPI to

refuse to produce documents in its possession based upon a contrary view of plaintiffs' claims.

The Magistrate Judge's Order also suggests that plaintiffs were entitled to discovery

based on their stated claims, and that RPI's objections based on the merits were improper.

(Order at p. 2).  This finding however, is clearly erroneous, as it contradicts the findings of this

---

[3] The Magistrate Judge's Order implies further that RPI failed to produce documents that were not in its possession, but were within its control.  The Order does not identify these documents or the entity that may possess such documents.  Nonetheless, there is no evidence, or even any suggestion, that some other entity within RPI's control possesses relevant documents that have not been produced  Moreover, RPI has no more authority to request the records of any third parties,  including the records maintained by its former bank, than does Antwerpen through its Subpoena power.

Court. Subsequent to filing its Opposition to the Motions to Compel, RPI filed a Motion to Dismiss based upon Antwerpen's failure to state a claim. RPI maintained that plaintiffs' claims were deficient due to the failure to allege any actual damages, and for the inability to allege personal jurisdiction against the individual defendants. In deciding RPI's Motion to Dismiss, this Court found that Antwerpen's allegations of damages were to some extent both vague and ambiguous. (December 12, 2002 Order, at p. 2) Specifically, in the Order dated December 12, 2002, this Court granted Antwerpen leave to file its Second Amended Complaint in order "to allege specific compensable monetary harm satisfying the jurisdictional threshold." (December 12, 2002 Order, at pp. 3-4). Plaintiff's Second Amended Complaint, upon which the Magistrate Judge's Order relies in part, was not filed until January 6, 2003, long after RPI's response to discovery and the preparation and filing of the Opposition to the Motions to Compel. RPI's objections, therefore, were justified, and were interposed only to preserve the defenses alleged by RPI and the individual defendants. Importantly, in each and every case, notwithstanding these objections, RPI produced all documents responsive to the discovery requests. Therefore, RPI, WTHF and the individual attorneys respectfully requests this Honorable Court to set aside the Order dated February 11, 2003, awarding expenses.

### E.    THE AWARD OF EXPENSES AGAINST WTHF AND THE INDIVIDUAL ATTORNEYS IS CONTRARY TO LAW

The imposition of an award of expenses absent notice and the opportunity to be heard is improper and contrary to the Federal Rules. Federal Rule of Civil Procedure 37(a)(4)(A) provides that the court is to issue an award of expenses on a successful motion to compel, "after affording an opportunity to be heard." (Emphasis added) As such, the issuance of an award of expenses against WTHF and the individual attorneys without any prior notice of the Court's intent to levy the award or the opportunity for a hearing prior to the award is contrary to the

express requirements of the Federal Rules. <u>Hathcock v. Navistar Intn'l Transp. Corp.</u>, 53 F.3d 36 (4th Cir. 1995).

In <u>Hathcock</u>, the Fourth Circuit overturned the District Court's award of monetary sanctions pursuant to Federal Rule of Civil Procedure 37 for discovery violations. <u>Id</u> at 42. There, as here, the moving party did not request sanctions against the attorney and the court failed to convene a hearing regarding such sanctions. <u>Id.</u> The Fourth Circuit held that the lack of notice and failure to conduct a hearing prior to the issuance of sanctions violated the attorney's right to due process. Therefore, the Fourth Circuit vacated the award. <u>Id.</u>

Likewise in the case at bar, Plaintiff did not request any sanction or the imposition of any expenses against WTHF or the individual attorneys. Accordingly, like the attorney in <u>Hathcock</u>, WTHF and the individual attorneys had no notice that the Plaintiff or the Court had raised any specific concern regarding the conduct of counsel, which would give rise to the imposition of any sanction. As such, WTHF and the individual counsel have not been afforded the mandated opportunity to be heard <u>prior</u> to the issuance of the award.

Importantly, the failure to provide any opportunity to be heard cannot be cured by conducting a hearing or providing for the submission of objections after the findings have been made and the award has been issued <u>Id.</u> at 42 ("reconsideration after a decision is rendered is not a substitute for a pre-decision hearing, when such hearing is otherwise required."). Accordingly, WTHF and the individual attorneys respectfully request that this Honorable Court set aside the Order dated February 11, 2003, awarding expenses against counsel.

**F.    THE AWARD OF EXPENSES AGAINST WTHF AND THE INDIVIDUAL ATTORNEYS IS CLEARLY ERRONEOUS AND CONTRARY TO LAW AS COUNSEL FULFILLED THEIR OBLIGATIONS UNDER THE FEDERAL RULES**

The Magistrate Judge's finding that WTHF and the individual attorneys failed to perform in accordance with discovery obligations is likewise unsupported.  Rule 26(g) of the Federal Rules of Civil Procedure defines the duty of counsel in responding to discovery requests. Pursuant to the Federal Rules, counsel must make, "a reasonable effort to assure that the client has provided all the information and documents responsive to the discovery demand." Advisory Committee Notes to 1983 Amendments to Rule 26(g).

In the case at bar, the only evidence with respect to WTHF's activities connected with its representation of RPI is that WTHF undertook a diligent investigation to ensure RPI's compliance with discovery. (Exhibit 2, ¶¶ 3, 5, 9, 15, 16, 23 and 24).  This is certainly not a case where an attorney unreasonably withheld or delayed the discovery of documents, or asserted a privilege where none existed.  To the contrary, WTHF produced every single document provided by RPI.  Furthermore, WTHF offered the information in response to interrogatories that was available and  provided by its client.[4]

Furthermore, any concerns raised by counsel for plaintiffs regarding the production of documents or other responses to discovery immediately were brought to RPI and discussed in detail. (Exhibit 1, ¶¶ 4-12).   WTHF directed RPI to continue to search its files for the information requested by Plaintiff until all documents had been produced or until RPI confirmed that no further relevant and responsive documents existed (Exhibit 1 ¶¶ 14 -16).  Indeed, at no

---

[4] Furthermore, in response to interrogatories and in opposition to the Motions to Compel, WTHF provided information, in good faith, that was complete and exhaustive in light of the early stage of the proceedings. Indeed, RPI had not begun at the time, and still has not, conducted any affirmative discovery. Therefore, WTHF's good faith belief was that the information provided in responses to interrogatories was complete in that it properly referred to the documents produced and included all information provided by RPI.

time did anyone at RPI give WTHF any indication that documents had been withheld or that the effort to locate responsive documents was incomplete or otherwise insufficient. (Exhibit 2, ¶ 24). Therefore, while the bare suspicion of the plaintiff that additional documents must exist may support the Court's requirement for the submission of an affidavit, without any facts supporting a determination that documents in existence, and in the possession or control of RPI, improperly have been withheld, this Court's imposition of expenses against counsel is clearly erroneous and contrary to the Federal Rules.

At all times, WTHF, acting in good faith, ensured the production of every single responsive document it knew, or had reason to know, was in the possession or control of RPI. WTHF made specific inquiries regarding the production of e-mail and further insurance related documents in response to complaints by counsel for plaintiffs. As such, WTHF and the individual attorneys fulfilled the requirements of the Federal Rules with regard to compliance with discovery.    Therefore, WTHF and the individual attorneys respectfully request this Honorable Court to vacate the award of expenses imposed in this matter in the Order dated February 11, 2003.

## G.    THE AWARD OF EXPENSES AGAINST WTHF IS UNJUST

Federal Rule of Civil Procedure 37(a)(4)(A) prevents an award of expenses where the circumstances would make such an award unjust. The award, in this case, is unjust.

The Order, and award of expenses against WTHF, makes findings tantamount to bad faith. Such a finding, however, is absolutely unwarranted and unsupported by the facts in the record. Indeed, while the Order implies that WTHF somehow prevented RPI's compliance with discovery, the facts would support only the Magistrate Judge's order that RPI confirm, under oath, its contention that it had produced every single responsive document. Therefore, if RPI is

20

able to confirm, under oath, that no further responsive documents are in its possession and control, this Court effectively will have awarded expenses against RPI and its counsel on the basis of RPI's submission of a proper and sustainable Opposition to plaintiffs' Motions to Compel. Such a result is unjust and is not supported by Federal law.

Even more perplexing is the Magistrate Judges implied finding that WTHF somehow bought time for RPI to file for bankruptcy. This determination is unsupported by any fact, and indeed, is refuted by the record in this case. First, common sense and logic will not support the suggestion that WTHF filed an Opposition on September 11, 2002 in order to delay discovery and to buy time for RPI to petition for bankruptcy four months later in mid-January of 2003, before the issuance of any Order. Furthermore, WTHF had absolutely no notice of RPI's intent to file for Chapter 7 relief and no involvement in the decision to seek relief in bankruptcy. Therefore, any suggestion that WTHF schemed with RPI to evade discovery until a bankruptcy petition could be filed is wholly unsupported, and indeed, contradicted by the facts in this case.

Finally, the award of expenses in this case following the filing of RPI's petition for Chapter 7 relief in bankruptcy is particularly unjust, as it will amount to the de facto imposition of a monetary award of expenses solely against counsel, without due process.

## III.    CONCLUSION

In light of the foregoing, RPI, WTHF and the individual attorneys respectfully request this Honorable Court to set aside the Order dated February 11, 2003, and in particular, to vacate the continuing discovery obligations imposed upon RPI and the award of expenses imposed in this matter against RPI, WTHF and the individual attorneys.

Respectfully submitted this 3ʳᵈ day of March 2003.


J. Brian Cashmere, Esquire
Federal Bar No. 14170
Kathleen Olden Barnes, Esquire
Justin S. Hawkins, Esquire
WATT, TIEDER, HOFFAR &
    FITZGERALD, L.L.P.
7929 Westpark Drive, Suite 400
McLean, VA  22102
Office:  703-749-1000
Fax:  703-893-8029

Counsel for Defendant,
Resolution Providers, Inc.

## Certificate of Service

I hereby certify that on ___March 3rd___, 2003, I caused a true copy of Objections to

Order of Discovery And Award of Expenses to be delivered First Class U.S. mail to:

> Price O. Gielen, Esquire
> Neuberger, Quinn, Gielen, Rubin & Gibber, P.A.
> 27th Floor
> One South Street
> Baltimore, MD 21202

_____
Justin S. Hawkins