IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
(NORTHERN DIVISION)

ANTWERPEN CHEVROLET, LTD.,     *
ANTWERPEN DODGE, LTD.,
ANTWERPEN MOTORCARS, LTD., and     *
J. A. MOTORCARS, INC., each d/b/a/
ANTWERPEN AUTOMOTIVE GROUP     *
6631 Baltimore National Pike
Baltimore, Maryland 21228     *

    *

and

    *

ARGO INSURANCE GROUP, INC.
5180 Watchwood Path     *
Columbia, Maryland 21044

    *

                                                    Civil Action No. CCB-02-CV-1271
    *
              Plaintiffs
    *

    vs.
    *

RESOLUTION PROVIDERS, INC.
CAROL SCOTT STEVENS, and     *
MARK L. MCDONALD
1928 Highway 35     *
Wall, New Jersey 07719-3513
    *
SERVE ON:     Resident Agent:
                  The Corporation Trust     *
                  300 E. Lombard Street
                  Baltimore, MD 21202     *

    *
             Defendants
    *

       *           *          *          *          *

<u>SECONDED AMENDED COMPLANT AND DEMAND FOR JURY TRIAL</u>

Plaintiffs, Antwerpen Automotive Group and Argo Insurance Group, Inc., allege as follows:

## THE PARTIES

1. Plaintiffs Antwerpen Chevrolet, Ltd., Antwerpen Dodge, Ltd., Antwerpen Motorcars, Ltd. and J. A. Motorcars, Inc. are affiliated companies that operate retail automobile dealerships and related businesses that generally do business as Antwerpen Automotive Group (hereinafter referenced as "Antwerpen"), with its principal place of business located at 6631 Baltimore National Pike, Baltimore, Maryland. Each of these affiliated companies are Maryland entities.

2. Plaintiff Argo Insurance Group, Inc. (hereinafter referred to as "Argo"), is a Maryland corporation that operates as an insurance agent and producer, with its offices and principal place of business located at 5180 Watchwood Path, Columbia, Maryland.

3. Upon information and belief, Defendant Resolution Providers, Inc. (hereinafter referenced as "RPI") is a corporation organized under the laws of the State of New Jersey. with its principal offices at 1720 Highway 34, P.O. Box 1140, Wall, New Jersey 07719. RPI registered to do business in Maryland on November 17, 1997.

4. Defendant Carol Stevens (hereinafter referred to as "Stevens") is a resident of New Jersey, and is the President and owns forty percent (40%) of RPI.

5. Defendant Mark McDonald (hereinafter referred to as "McDonald") is a resident of New Jersey, and is the Senior Vice-President and owns sixty percent (60%) of RPI.

## JURISDICTION AND VENUE

6. This Court has jurisdiction over the subject matter of this action under and by

virtue of 28 U.S.C. § 1332 (a)(1), in that this is an action between citizens of different states and the amount in controversy exceeds the sum of $75,000.00, exclusive of interest and costs.

7. This Court also has supplemental jurisdiction over the subject matter of the non-federal claims for relief asserted by virtue of 28 U.S.C. § 1367.

8. Venue of this action in this judicial district and division is proper under and by virtue of 28 U.S.C. § 1391(a)(2), in that, among other things, a substantial part of the events or omissions giving rise to the claims in this action occurred in this judicial district and division, and because RPI is subject to personal jurisdiction in this district.

## GENERAL ALLEGATIONS

9. Antwerpen owns and operates multiple car dealerships. Antwerpen **and Argo worked together to** offers **Antwerpen's** customers the opportunity to protect the investment in their vehicles by contracting for a Loan Lease Deficiency Waiver (hereinafter referred to as a "GAP Contract"). The GAP Contract provides coverage for the difference between the proceeds a car owner receives from his automobile insurance company when a car is "totaled" in an accident and the actual payoff amount the customer owes on his car loan. RPI is an "administrator" of GAP Contract programs and, as such, is responsible for administering and paying claims, and for arranging for an insurance policy that indemnifies **the car dealer** against losses on the contracts.

10. On or about August 14, 1998, Antwerpen and RPI entered into a Loan/Lease Deficiency Waiver Dealer Agreement (hereinafter referred to as the "Dealer Agreement"). A copy of the Dealer Agreement signed by Antwerpen is attached hereto as Exhibit A.

11. Pursuant to the express terms of the Dealer Agreement, RPI was obligated (i) to

3

obtain indemnification insurance against losses resulting from claims under customer contracts, and to furnish Antwerpen with evidence of such coverage; (ii) to approve or disapprove claims; (iii) to pay a commission to Argo for each customer contract submitted to RPI; (iv) to set aside a portion of each fee submitted in a trust account "to be utilized solely for the payment of claims and claims adjustment under the 'Gap' and for no other use" (hereinafter referenced as the "Trust Account"); and (v) to reimburse Antwerpen, the lender or lessor from the Trust Account for amounts RPI authorized to be paid in claims and refunds.

    12.    At all relevant times, Antwerpen acted in accordance with the Dealer Agreement by offering the program to its eligible customers, properly identifying those customers to RPI, and submitting the appropriate fees to RPI.

    13.    RPI and Argo entered into a separate "Agent Agreement" pursuant to which RPI agreed to pay commissions to Argo for each GAP Contract sold to an automobile customer and forwarded to RPI by Antwerpen.

    14.    In addition to entering into a GAP Contract program with RPI, in 1998 Antwerpen also entered into a "Service Contract Program" with RPI, pursuant to which Antwerpen would offer its customers a contract that would provide extended warranty services for their new vehicle (hereinafter, "Service Contracts"). RPI ~~was to~~ **agreed to** administer the program, obtain indemnification insurance coverage for ~~the~~ **Antwerpen's** obligations under the contracts, **and to approve and disapprove claims.** ~~It was further agreed~~, **Pursuant to the "Client Contingent Commission Agreement" presented by RPI and accepted by Antwerpen, RPI agreed to "share in the income" generated by the Program pursuant to an "Earnings Formula" set forth in the Agreement, and to "Reserve" the portion of the fee submitted to RPI that was**

4

**not used to pay RPI's fees or the insurer. Finally, RPI agreed** that Argo would receive a commissions **on each contract** for generating this business for RPI. In October 2001, Antwerpen and Argo learned that RPI had failed to arrange for the insurance coverage beginning in late 1999 or early 2000. Thus, Antwerpen learned that RPI had failed to obtain insurance coverage for hundreds of Vehicle Service Contracts. **Since RPI did not obtain the insurance, on information and belief, RPI and the Individual Defendants pocketed the proceeds for themselves.** An unexecuted copy of **both** the "Service Contract Program Contingent Commission Agreement" **and the "First Option Dealer Agreement"** presented by RPI and accepted by Antwerpen is **are** attached hereto as Exhibits B **and C.**

15. Subsequent to learning that RPI had made false representations and had failed to obtain insurance coverage for hundreds of Service Contracts, Antwerpen and Argo contacted the agent for the insurance company with whom indemnification insurance for the GAP Contract program was to have been obtained. Lee and Mason, the agent for that insurance company, Nationwide Insurance Company, informed the Plaintiffs that RPI had submitted for coverage only approximately ten percent (10%) of the GAP Contracts submitted to RPI by Antwerpen dealerships over the preceding 2-1/2 years. Thus, RPI failed to obtain indemnification insurance for the vast majority of GAP policies purchased by Antwerpen's customers.

16. Antwerpen stopped submitting both GAP Contracts and Vehicle Service Contracts to RPI after learning about RPI's improper actions.

17. Argo received five checks for warranty commissions, totaling $28,108.95 dated June 1, 2001, which were drawn on an RPI bank account at Summit Bank. Argo did not immediately deposit these checks after receiving them from RPI, and when

Argo subsequently attempted to deposit these checks, it was informed by Summit Bank that the RPI account had been closed. RPI has not re-issued these checks to Argo. Attached hereto as Exhibit D are copies of the June 2001 checks.

18. On January 29, 2002, Price O. Gielen, attorney for Plaintiffs, wrote a letter to Defendants Stevens and McDonald at RPI requesting documentation to prove that the appropriate insurance had been obtained for the GAP and Service Contracts. Mr. Gielen further requested that RPI explain why RPI had failed to pay claims, refunds and commissions relating to both Contracts. A copy of the Letter, dated January 29, 2002 is attached hereto as Exhibit ~~E~~ E.

19. On February 7, 2002, William S. Nixon, an attorney representing RPI responded by letter to the January 29, 2002 letter. Mr. Nixon falsely claimed that insurance coverage had been obtained with respect to the Service Contracts, even though RPI had failed to remit premiums to the insurance company with respect to every Service Contract submitted to RPI by Antwerpen beginning late 1999 or early 2000. Mr. Nixon also failed to state whether or not appropriate insurance coverage had been obtained for the GAP Contracts. Further with respect to the Service Contracts, Mr. Nixon falsely claimed that Argo would actually owe RPI money due to an abnormally high number of cancellations. Most peculiarly, Mr. Nixon requested that Antwerpen and/or Argo provide RPI with information identifying the customers who had entered into the GAP Contracts which had been sent to and accepted by RPI. Mr. Nixon further stated that RPI was in the process of providing a final statement of commissions that would be provided during the week of February 18, 2002. A copy of Nixon's letter, dated February 7, 2002, is attached hereto as Exhibit ~~D~~ F.

20. On February 12, 2002, Mr. Gielen responded by letter to Mr. Nixon's letter of February 7, 2002. Mr. Gielen's letter of February 12, 2002 acknowledged the contention in Mr. Nixon's previous letter that insurance coverage had been obtained for the Service Contracts, and questioned whether RPI had adhered to its agreement with the insurance company by reporting each and every Service Contract to the insurance company on a monthly basis and by remitting to the insurance company the "net proceeds" from the premiums paid by Antwerpen's customers to obtain the Service Contracts. Mr. Gielen's letter further requested documentation demonstrating RPI's adherence to the requirements for securing insurance, and requested documentation regarding the establishment of the appropriate reserve account for the Service Contracts and a current accounting of the proceeds placed in the reserve account. With respect to the GAP Contracts, Mr. Gielen's letter again requested the identity of the insurance company where indemnification insurance for the GAP Contracts had been obtained. Finally, Mr. Gielen's letter pointed out that RPI well knew the identities of the customers who had entered into GAP Contracts, and enclosed a commission statement previously sent by RPI to Argo that identified the customers. A copy of the letter, dated February 12, 2002, is attached hereto as Exhibit E-G.

21. By a letter dated February 15, 2002, Mr. Nixon responded to the February 12, 2002 letter, but he failed to respond to the question whether RPI had remitted proceeds to the insurance company to obtain coverage for the Service Contracts, and failed to provide any documentation to demonstrate that RPI had done anything with the Service Contract proceeds submitted by Antwerpen other than improperly retain the proceeds for the benefit of the Defendants, despite **the fact** that Mr. Gielen's letter had specifically requested documentation demonstrating that RPI had properly established and funded a trust account with the Service

Contract proceeds submitted by Antwerpen. With respect to the GAP Contract Program, Mr. Nixon represented that that he had not yet received the original letter of February 12, 2002 with a copy of the commission statements that his client, RPI, had originally produced to Argo, and falsely represented that upon receipt of these statements, RPI would identify where coverage was placed for specific customers. A copy of the letter, dated February 15, 2002, is attached hereto as Exhibit F̶ H.

22. By letter dated February 21, 2002, Mr. Nixon forwarded to Mr. Gielen a document that purported to reflect the commissions due to Argo with respect to the GAP Contract program. According to this document, RPI owes Argo at least $36,194.33 for commissions pursuant to the Agent Agreement. Mr. Nixon's letter did not identify any contracts for which indemnification insurance coverage had been obtained. A copy of the cover letter, dated February 21, 2002, and the enclosed commission summary is attached hereto as Exhibit G̶ I.

23. On March 14, 2002, Mr. Gielen again wrote to Mr. Nixon requesting RPI to identify where insurance coverage was obtained for Antwerpen's customers. He further requested that RPI confirm that the Trust Account had been maintained pursuant to the Agreement, identify where the "Trust Account" was located, and specify the amount in the account. No response **was** h̶a̶s̶ ̶b̶e̶e̶n̶ received to this last correspondence. A copy of the letter, dated March 14, 2002, is attached hereto as Exhibit H̶ J.

24. On March 15, 2002, Mr. Gielen again wrote to Mr. Nixon requesting documentation demonstrating that RPI had followed the appropriate procedures, including copies of the monthly reports that should have been provided by RPI to an appropriate insurance

8

company; documentation that would establish that the "net proceeds" had been remitted by RPI to the insurance company; and documentation that would demonstrate that RPI had established and properly funded a reserve account relating to the Service Contracts. A copy of the letter, dated March 15, 2002, is attached hereto as Exhibit I K.

25. RPI has failed to pay claims and refunds to customers under the GAP Contracts, and has failed to account for approximately $100,000.00 that RPI should be maintaining in the Trust Account for the benefit of Antwerpen and its customers who purchased GAP Contracts. **Since Antwerpen executed the GAP Contracts with its customers, Antwerpen has been and continues to be obligated to pay refunds when contracts are cancelled and to pay the loan/lease deficiency amount when the car is totaled in an accident and the actual payoff amount the customer owes on the car exceeds the insurance policy. Plaintiffs have had to honor and satisfy obligations to customers under the GAP Contracts and will continue to do so as the claims continue over the life span of the covered vehicles. However, Antwerpen is not being reimbursed by the Program for the amounts it has paid to customers as provided in the agreements with RPI.**

26. RPI has failed to pay claims and refunds to customers under the Service Contracts program, and has failed to account for approximately $600,000 that RPI should be maintaining in a trust account for the benefit of Antwerpen and its customers who purchased Service Contracts. **Since Antwerpen executed contracts with its customers to provide extended warranty service, Antwerpen has been and continues to be obligated to provide that service, and to pay refunds when contracts are cancelled. Plaintiffs have had to honor and satisfy obligations to customers under the extended warranty service and will continue to do so as**

**the claims continue over the life span of the covered vehicles. However, Antwerpen is not being reimbursed by the Program for the amounts it has paid to customers as provided in the agreements with RPI.**

27.  Upon information and belief, Stevens and McDonald have improperly used for their personal benefit and gain the monies which were submitted to them by Antwerpen to fund the trust accounts, purchase indemnification insurance and pay Argo's commissions with respect to both the GAP Contracts and Service Contracts programs. Upon information and belief, Stevens and McDonald knowingly misused the premiums to live a lavish lifestyle, including the purchase and furnishing of an extravagant residential property at 111 Park Avenue, New Jersey.

28.  Stevens and McDonald, who reside together, controlled all aspects of the operations of RPI. **In fact, McDonald came down to Maryland on several occasions to discuss entering into the contracts with Antwerpen and Argo, to sign the contracts, and to hold a seminar for Antwerpen's service personnel regarding the policies. In the seminar, McDonald guaranteed to the service personnel that they would never have problems with receiving reimbursements for the claims.** Both **Stevens and McDonald** knew that Antwerpen and Argo were submitting each GAP and Service Contract with the full administrative fee to RPI with the express understanding that the funds were being used to purchase indemnification insurance, fund the trust accounts, and pay Argo's commissions. Each time RPI accepted a GAP or Service Contract and the full administrative fee corresponding to it, RPI was implicitly representing to Antwerpen and Argo that the proceeds were being used to purchase the indemnification insurance, fund the trust accounts and pay Argo's commissions. By RPI, operating through Stevens and McDonald, failing to inform Antwerpen and/or Argo that the fees

were not being used to purchase indemnification insurance or fund the trust accounts, RPI, at the direction of Stevens and McDonald, was knowing and intentionally defrauding Antwerpen and Argo by failing to inform them of the material, relevant and critical information that the fees were not being used for the intended purposes.

29. Stevens and McDonald used RPI as their alter ego in order to obtain and convert monies received from Antwerpen which were intended to be used to pay insurance premiums and to fund the trust accounts in accordance with the agreements between the parties.

30. In order **to honor its contractual obligations, including the obligation set forth in the "Dealer Agreement" to "provide repair services on vehicles" covered by Service Contracts, and to** protect its reputation and maintain its good will, Antwerpen ~~must~~ has honor**ed and satisfied** obligations to customers under the GAP and Service Contracts. **Antwerpen has had to provide extended warranty service, without compensation or reimbursement, through the program which RPI was to administer pursuant to the terms of its agreements with Antwerpen and Argo. Antwerpen also has had to pay customer claims and refunds which should have been paid by RPI from the funds entrusted to it as the administrator of the Programs. Antwerpen has paid or is in the process of paying approximately $50,000.00 in claims, as claims are submitted to Antwerpen, Antwerpen's losses will continue and will exceed at least $70,000.00. Therefore, Antwerpen and Argo have and will continue to** suffer losses due to the failures of the Defendants to establish and fully fund the trust accounts, to obtain indemnification insurance, ~~or~~ and to pay the obligations themselves.

## FIRST CLAIM FOR RELIEF

### BREACH OF CONTRACT
### (Against RPI)

31.    Plaintiffs hereby incorporate each and every allegation made in paragraphs 1 through 30.

32.    Antwerpen and Argo have performed all of the obligations required of them pursuant to the agreements establishing the GAP and Service Contract Programs.

33.    Defendants have breached **the implied covenants to Antwerpen and Argo of good faith and fair dealing. Defendants also have breached** their obligations and promises by, among other things, failing **to pay Antwerpen for repair services performed by Antwerpen on vehicles covered by Service Contracts; failing to establish the trust accounts; failing to** pay commissions to Argo; and failing to pay customer claims and refunds.

## SECOND CLAIM FOR RELIEF

### FRAUD AND FRAUDULENT CONCEALMENT
### (Against RPI, Stevens and McDonald)

34.    Plaintiffs hereby incorporate each and every allegation made in paragraphs 1 through 33.

35.    Defendants' misrepresentations to Plaintiffs **that it would pay the GAP Contract and Service Contract claims,** and Defendants' intentional failure to inform the Plaintiffs that fees would not be used to **would** arrange for indemnification insurance, and the funding of the trust accounts **and share in the profits from the GAP Contract and Service Contracts,** constituted assertions of false representations of a material fact and were made with actual malice.

36.     Defendants knew that the misrepresentations and omissions of these material facts regarding the insurance indemnification and establishment of the trust accounts were false. Defendants ~~wanted to~~ **intended to** induce Plaintiffs into continuing to sell GAP and Service Contracts which RPI would administer. Defendants knew that Plaintiffs would not be willing to continue to have RPI administer the GAP or Service Contracts unless the insurance indemnification was secured and the trust accounts were established and funded. Thus, Defendants' misrepresentations **and fraudulent concealments of material facts** were made with the intention of having Plaintiffs rely and act upon them.

37.     Plaintiffs reasonably and justifiably relied upon Defendants' misrepresentations and fraudulent concealments.

38.     As a result of Defendants' misrepresentations, Plaintiffs have incurred damages.

### THIRD CLAIM FOR RELIEF

**CONVERSION**
**(Against RPI, Stevens and McDonald)**

39.     Plaintiffs hereby incorporate each and every allegation made in paragraphs 1 through 38.

40.     Defendants collected fees from Plaintiffs for the purposes of paying claims, refunds, and commissions, funding the trust accounts, and obtaining indemnification insurance to protect Antwerpen against claims and losses resulting from Antwerpen honoring the obligations to its customers set forth in the GAP and Service Contracts.

41.     Plaintiffs had believed, based upon Defendants' representations, that funds paid to RPI would be used, and were being used, to arrange for indemnification insurance, establish the

13

trust accounts, pay customer claims and refunds, and pay Argo's commissions. ~~The Defendants~~ **RPI and the Individual Defendants** converted the fees paid by Antwerpen by using them for personal purposes, rather than for these purposes.

### FOURTH CLAIM FOR RELIEF

### UNJUST ENRICHMENT
(Against RPI, Stevens and McDonald)

42. Plaintiffs hereby incorporate each and every allegation made in paragraphs 1 through 41.

43. Plaintiffs conferred a benefit on Defendants when they submitted the appropriate fees to RPI for the GAP and Service Contracts. The Defendants unquestionably knew they were receiving a benefit when they accepted the funds and used the money for their own benefit.

44. **Antwerpen is using its own funds to pay for vehicle repairs, make refunds and provide GAP coverage.** Argo has suffered the loss of commissions due and owing to it. Permitting Defendants to retain the fees paid to RPI would be unjust because the fees were **specifically intended** to be used to purchase indemnification insurance and establish the trust accounts **in order to provide funds** to pay customer claims and refunds and Argo's commissions.

### FIFTH CLAIM FOR RELIEF

### BREACH OF FIDUCIARY DUTY
(Against RPI)

45. Plaintiffs hereby incorporate each and every allegation made in paragraphs 1 through 44.

46. **RPI had a fiduciary duty to Antwerpen in two respects. First, under both the**

**GAP and Service Contract Programs, RPI had an obligation to establish and administer trust accounts for the benefit of Antwerpen, and to obtain indemnification insurance for the benefit of Antwerpen. Second, under the Service Contract Program, RPI agreed with Antwerpen to share in the income, if any generated by the Program.** ~~RPI had a fiduciary duty to Antwerpen by virtue of contract and common law, and~~ **RPI breached** ~~that~~ **its duties by failing to establish and fund the trust accounts, failing to obtain the indemnification insurance, and failing to share the income.** ~~Retaining and misusing the fees paid by Antwerpen, instead of using the fees for the purposes specified in the agreements between the parties.~~

## SIXTH CLAIM FOR RELIEF

### ANTICIPATORY BREACH OF CONTRACT
### (Against RPI)

47. Plaintiffs hereby incorporate each and every allegation made in paragraphs 1 through 46.

48. As set forth herein, RPI has breached its contracts with Antwerpen by failing to pay customer claims and refunds pursuant to the terms of the GAP and Service Contracts. It is anticipated that as additional claims and refunds are sought by customers pursuant to the terms of their contracts, RPI also will fail to pay those claims and refunds.

WHEREFORE, Plaintiffs respectfully request that this Court grant judgment in their favor and against Defendants,

(a) for compensatory **damages in excess of at least $70,000 to pay for vehicle repairs pursuant to the service contracts, and to** satisfy customer claims and

       refunds, plus interest, **with** ~~in~~ the **precise** amount to be determined at trial;

(b)    for compensatory damages to pay Argo's commissions, plus interest, in an amount in excess of ~~$50,000~~ **at least $64,000** (*see* **Paragraph Nos. 17 and 21**); and

(c)    for compensatory damages to reimburse Antwerpen for the amounts that should have been maintained in the trust accounts, in the amount of approximately $700,000, with the specific amount to be determined at trial;

(d)    for punitive damages in the amount of $1 million;

(e)    costs of suit;

(f)    attorneys' fees; and

(g)    such other relief as this Court may deem equitable and proper.

## JURY DEMAND

Plaintiffs demand a trial by jury of this action.

Respectfully submitted,

Dated: January 6, 2003

---

PRICE O. GIELEN
Trial Bar No. 00577
Neuberger, Quinn, Gielen, Rubin & Gibber, P.A.
One South Street
27th Floor
Baltimore, Maryland 21202
(410) 332-8584

Attorneys for Plaintiffs

177650 - 1730.2