# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MARYLAND
# (NORTHERN DIVISION)

| | | |
|---|---|---|
| ANTWERPEN CHEVROLET, LTD., et al., | * | |
| Plaintiffs | * | Civil Action No. CCB02CV1271 |
| vs. | * | |
| RESOLUTION PROVIDERS, INC., et al., | * | |
| Defendants | * | |

\* \* \* \* \*

## AMENDED NOTICE OF DEPOSITION PURSUANT TO
## FEDERAL RULE OF CIVIL PROCEDURE 30 (b)(6)

**PLEASE TAKE NOTICE** that at 9:00 a.m. on November 20, 2002, at the offices of Neuberger, Quinn, Gielen, Rubin & Gibber, P.A., One South Street, 27th Floor, Baltimore, Maryland, 21202, Price O. Gielen, Attorney for Plaintiffs, will take the deposition of Resolution Providers, Inc. (RPI), pursuant to Federal Rule of Civil Procedure 30 (b)(6). The deposition will be taken before a Notary Public or such other person qualified to administer oaths and will be recorded by stenographic means. The oral examination will continue from day to day until completed.

As set forth specifically in Exhibit A, which is incorporated herein by reference, the deposition will examine the business relationship between RPI, Antwerpen Chevrolet, Ltd., Antwerpen Dodge, Ltd., Antwerpen Motorcars, Ltd. and J. A. Motorcars, Inc. (doing business as Antwerpen Automotive Group) ("Antwerpen") and Argo Insurance Group, Inc. ("Argo"); any contracts or agreements between RPI, Antwerpen and/or Argo; the procedures for processing the Dealer Agreement Loan/Lease Deficiency Contracts ("GAP Contracts"), claims and cancellations; the basis for

rejecting or disapproving GAP Contract claims; the process for securing indemnification insurance to cover the GAP Contracts; the insurance companies RPI contracted with for the indemnification insurance for GAP Contracts; the procedures for obtaining insurance for each GAP contract; information on the insurance obtained for each GAP Contract; the procedures for determining and distributing commissions or fees to Argo, Antwerpen or RPI for the GAP Contracts; the documentation for each commission paid for the GAP contract; the procedures for processing the Service Contracts for the extended vehicle warranties; the basis for rejecting or disapproving Service Contract claims; the process for securing indemnification insurance to cover the Service Contracts; the insurance companies RPI contracted with for the indemnification insurance for the Service Contracts; the procedures for obtaining insurance for each Service Contract; information on the insurance obtained for each Service Contract; the location of the Trust Account for the Service Contracts; and the process for determining the commissions for the Service Contracts; the documentation for each commission paid for the Service Contracts; and each of Defendants' affirmative defenses.

Pursuant to Federal Rule of Civil Procedure 30 (b)(6), RPI shall designate the officers, directors or other persons who are able to testify about the areas to be examined during the deposition.

Respectfully submitted,

_____/s/_____
PRICE O. GIELEN
Trial Bar No. 00577
Neuberger, Quinn, Gielen, Rubin & Gibber, P.A.
One South Street, 27th Floor
Baltimore, Maryland 21202
(410) 332-8584
Attorneys for Plaintiffs

173918

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY, that on this 1st day of November, 2002, a copy of the foregoing Notice of Deposition Pursuant to Federal Rule of Civil Procedure 30 (b)(6) was faxed and mailed, first-class, postage prepaid, to J. Brian Cashmere, Esquire and Justin Hawkins, Esquire, Watt, Tieder, Hoffar & Fitzgerald, L.L.P., 7929 Westpark Drive, McLean, Virginia 22102.

_____/s/_____
PRICE O. GIELEN

173918 – 1730.2

**EXHIBIT A TO NOTICE OF 30(b)(6) DEPOSITION**
**THE MATTERS AS TO WHICH EXAMINATION IS REQUESTED**

The deposition will address the following areas with regard to the business relationship between RPI, Antwerpen and Argo. Each of the terms in bold are defined in Exhibit B, which is incorporated by reference.

1. The terms pursuant to which RPI agreed to administer the **GAP Contracts** provided by **Antwerpen** and/or Argo.

2. The solicitation and marketing of the **GAP Contract** and **Service Contract** Programs to **Antwerpen** and/or Argo, including but not limited to the efforts of Defendants Mark MacDonald and Carol Stevens in the marketing and solicitation of the Programs.

3. All contacts Mark MacDonald and Carol Stevens have had with the State of Maryland with respect to the **GAP Contract** and **Service Contract** Programs.

4. What RPI agreed to do and what RPI actually did regarding the allocation of the amount paid to **RPI** with respect to each **GAP Contract**, including:

    a. the amount to be retained and the amount actually retained by RPI as fees and expenses or otherwise,

    b. the amount to be paid and the amount actually paid as **commissions** or otherwise to Antwerpen and/or Argo,

    c. the amount to be paid and the amount actually paid for indemnification insurance premiums, and

    d. the amount to be reserved and the amount actually reserved for the payment of claims and refunds.

5. For each **GAP Contract** claim:

    a. whether the claim was approved or disapproved,

    b. the reason for the approval or disapproval, and

    c. the amount paid and to whom.

4

173918

6. For each **GAP Contract** cancellation:

    a. whether a portion of the premium payment was refunded,

    b. how the amount of the refund was determined, or the decision not to make a refund was made, and

    c. the amount of any refund paid and to whom.

7. For each **GAP Contract,** whether insurance coverage was obtained, and

    a. if so, with whom and the identity of documents that demonstrate that there was insurance coverage, and

    b. if not, why not, and an explanation of who received the funds submitted to **RIP** to obtain insurance coverage.

8. The identity of each document that reflects the status of the **GAP Contracts** generated by **Argo** and/or **Antwerpen** and administered by **RPI**.

9. The identity of the insurance policies that were obtained by **RPI** relating to the **GAP Contract**.

10. The terms pursuant to which **RPI** agreed to administer the **Service Contracts** provided by **Antwerpen** and/or Argo.

11. What **RPI** agreed to do, and what **RPI** actually did regarding the allocation of the amount paid to **RPI** with respect to each **Service Contract**, including:

    a. the amount to be and the amount actually retained by **RPI** as fees, expenses or otherwise,

    b. the amount to be paid and the amount actually paid as **commissions** or otherwise to **Antwerpen** and/or **Argo**,

    c. the amount to be paid and the amount actually paid for indemnification insurance premiums, and

    d. the amount to be and the amount actually reserved for the payment of claims and refunds.

12. a. The identity of any and all insurance policies that were obtained by **RPI** relating to the **Service Contracts**.

  b. As to each Service Contract, whether indemnification insurance coverage was obtained, and (i) if so, from whom, and (ii) if not, why not.

13. The identity of each bank account established or maintained for the **Reserve** and for each account,

  a. the name on the account and the account number,

  b. the name, address and phone number of the financial institution, and

  c. the name and phone number of any contact person at each financial institution where such an account was established and or maintained.

14. The identity of all documents relating to the establishment, maintenance and operation of the **Reserve**.

15. The identity of each **Service Warranty** claim and/or refund request, and

  a. whether the claim or refund request was approved or disapproved,

  b. the reason for the approval or disapproval, and

  c. the amount paid on the claim or refund request and to whom.

16. The status of the **Service Contracts** generated by **Argo** and/or **Antwerpen** and administered by **RPI,** and the identity of the documents that reflect the status**.**

17. The facts that support each of the following affirmative defenses stated in the Amended Answer:

  a. Failure to satisfy the necessary and agreed upon preconditions to Plaintiff's exercise of any alleged rights under the alleged contracts.

  b. Anticipatory and material breaches of the express and implied requirements of the alleged contracts bar further enforcement of the alleged contracts and any recovery of the relief requested against Defendant

173918

    c.    Causes of action and requested relief against Defendant are barred by the doctrines of payment, setoff, release and accord and satisfaction.

    d.    Plaintiffs' claims are barred by Plaintiff's failure to perform substantially Plaintiffs' obligations under the alleged contracts.

    e.    Plaintiffs' requested relief is barred by operation of alleged contract language.

    f.    Plaintiffs' claims are barred by doctrines of waiver and estoppel.

    g.    Plaintiffs' claims are barred by the Statute of Frauds.

    h.    Plaintiffs' claims are barred by the doctrine of laches.

## EXHIBIT B TO NOTICE OF DEPOSITION
## PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 30 (b)(6)

## INSTRUCTIONS AND DEFINITIONS

A. **"You"** or **"your"** refer to RPI and/or any person acting or purporting to act on behalf of RPI, now or in the past, including but not limited to any attorney.

B. **"Document"** is used in its broadest and most inclusive sense and means and includes any written, typed, printed, recorded or graphic matter, however produced or reproduced, of any kind and description and whether an original, master, duplicate or copy, including, but not limited to, papers, notes, accounts, books, contracts, agreements, drawings, telegrams, e-mails, tape recordings, reports, studies, working papers, corporate records, minutes of meetings, notebooks, bank deposit slips, bank checks, canceled checks, diaries, diary entries, appointment books, desk calendars, photographs, transcriptions or sound recordings of any type of personal or telephone conversations or negotiations, meetings or conferences or things similar to any of the foregoing, and to include any data, information or statistics contained within any data storage modules, tapes, discs or other memory device, or other information retrievable from any storage systems, including, but not limited to, computer-generated reports and printouts. The word "document" also includes data compilations from which information can be obtained and translated, if necessary, through detection devices in a reasonably usable form. If any document has been modified by the addition of notations or otherwise, or has been prepared in multiple copies which are not identical, each modified copy or unidentical copy is a separate "document."

173918

C. **"Communication"** means any form of communication or transmission of information, including but not limited to notes of conversations, meetings, notes, letters, memoranda, instructions, telexes, telecopies and any other written material or transmittal of information.

D. **"Person"** in the singular as well as the plural, includes a corporation, partnership, or other business association or entity, a natural person or any government or governmental body, commission, board or agency.

E. **"Relating to"** means including, or, in any way, directly or indirectly, concerning, referring to, consisting of, mentioning, considering, underlying, modifying, amending, confirming, endorsing, evidencing, mentioning, representing, supporting, qualifying, terminating, revoking, counseling, or negating.

F. **"Or"** when it appears in a request herein, should not be read so as to eliminate any part of the request, but, whenever applicable, should be read to have the same meaning as the word "and." Likewise, the term "and," when it appears in a request herein, should not be read so as to eliminate any part of the request, but, whenever applicable, it should have the same meaning as the word "or." The use of a word in its singular form shall be deemed to include within its use the plural form as well, and the use of a word in its plural form shall be deemed to include within its use the singular form as well.

G. "**RPI**" shall mean Defendant Resolution Providers, Inc. and any of its employees, agents, representatives, attorneys, heirs and/or assigns, and all other persons purporting to act on its behalf.

  H. "**Antwerpen**" shall mean Defendant Antwerpen Chevrolet, Ltd., Antwerpen Dodge, Ltd., Antwerpen Motorcars, Ltd., and J.A. Motorcars, Inc., d/b/a Antwerpen Automotive Group.

  I. "**Argo**" shall mean Plaintiff Argo Insurance Group, Inc.

  J. "**GAP Agreement**" shall mean the Dealer Agreement Loan/Lease Deficiency Waiver entered into between Antwerpen Automotive Group and Resolution Providers, Inc. on August 14, 1998.

  K. "**GAP Contract[s]**" shall refer to the Loan/Lease Deficiency Waiver Contract sold to automobile owners by Antwerpen that cover the difference between a car owner's automobile insurance company's payment when the car is totaled in an accident and the actual value of the car.

  L. "**Agent Agreement**" shall refer to the Agent Agreement that RPI and Argo entered into regarding the payment of commissions to Argo for each GAP contract sold to an automobile customer and forwarded to RPI.

  M. "**Service Contract Program**" shall mean the extended vehicle warranty service program entered into between Antwerpen Automotive Group and Resolution Providers, Inc. beginning in or about August, 1998.

  N. "**Service Contract[s]**" shall refer to the extended vehicle warranty service contracts sold to automobile owners by Antwerpen that extended the warranty period on the automobile.

  O. "**Insurance Company**" means any and all insurance companies RPI has contracted with to provide insurance relating in any manner to the Gap Contracts or Service Contracts.

173918

P. "**Reserve**" means the portion of the Service Contract payment that RPI and/or the Insurer sets aside to pay the claims, losses and/or refunds.

Q. "**Contingent Commission Agreement**" shall refer to the Agent Agreement that RPI and Argo and/or Antwerpen entered into in 1998 regarding the payment of commissions to Argo and/or Antwerpen for each Service Contract sold to an automobile customer and forwarded to RPI.

R. "**Commissions**" shall refer to the commissions RPI agreed to pay Antwerpen and/or Argo for the sale of Service Contracts to be administered by RPI.

S. The time frame for all document requests cover the period from January 2, 1998 to the present, and each request should be considered as requesting information for that time period.